47 CCPA

**Application of Victor MILLS.**

**Patent Appeal No. 6455.**

United States Court of Customs and Patent Appeals.

Aug. 11, 1960.

Allen & Allen, Cincinnati, Ohio, The Procter & Gamble Company, Howard W. Bremer, Cincinnati, Ohio (Gibson Yungblut, Cincinnati, Ohio, of counsel), for appellant.

Clarence W. Moore, Arthur H. Behrens, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

SMITH, Judge.

■ This appeal is from the decision of the Board of Appeals affirming the final rejection of claims 3-9 and 11-13 in application serial No. 304,853 filed August 16, 1952, entitled "Detergent Composition." No claims have been allowed.

Claim 3 is representative and reads as follows:

"3. A wetting, sudsing and detergent composition in small solid particle form which comprises a mixture of an organic detergent agent, selected from the group consisting of water soluble salts of alkyl substituted mononuclear aryl sulfonic acids and mixtures thereof with water soluble salts of alkyl sulfuric acid esters, all containing from 8 to 22 carbon atoms in the alkyl chain, *the said organic detergent agent being characterized by its tendency to promote caking* in detergent compositions *and a water soluble salt of methyl sulfate in an amount at least 1.5% by weight of the detergent composition and sufficient to inhibit the caking thereof."* [Emphasis ours.]

The other claims specify more particularly the amount of caking inhibiting agent present in the composition, name the sodium salt of methyl sulfate as a specific caking inhibiting constituent.

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of* *Judge O'CONNELL,* pursuant to provisions of Section 294(d), Title 28 United States Code.

and define the detergent component in more limited terms.

The invention is directed to a detergent composition made up of the various stated ingredients, one of which is a sulfonate detergent, specifically the water soluble salts of certain alkyl aryl sulfonic acids. When such a detergent composition is produced in its granular form and is subjected to humid conditions the granules tend to cake or stick to each other. Such caking destroys the desired free flowing characteristic of the composition. It is this undesirable caking of the sulfonate detergents which appellant seeks to minimize by incorporating in the composition a sufficient quantity of the water soluble salts of methyl sulfate as a caking inhibitor.

The board affirmed the examiner's rejection of all the claims as being unpatentable over Lewis, U. S. Patent No. 2,631,980, issued March 17, 1953, filed July 22, 1949, the only prior art reference of record applied by the board.

The Lewis patent specifically teaches that by adding lauryl sulfate detergent, as the "preferred additive" to water soluble sulfonate detergent compositions, freer flowing products are obtained than when such sulfate detergent is absent. Lewis also states that "other alkyl sulfates within the 8 to 12 carbon atom range may be utilized to impart substantial beneficial properties to the detergent composition." Lewis also indicates that the alkyl sulfate additives within this range function as detergents in addition to having an "anti-caking" effect.

Appellant's claims and the Lewis disclosure call for compositions whose anti-caking materials are members of an homologous series. Appellant admits this. The methyl sulfate of appellant's claimed detergent compositions is the $C_1$ alkyl sulfate. The alkyl sulfates of the Lewis reference are the $C_8$ to $C_{12}$ alkyl sulfates.

Since the Lewis reference does not disclose the claimed methyl sulfate, the issue here is whether the Lewis disclosure would, at the time this invention was made, make it obvious to one of ordinary skill in the art to use a methyl sulfate as a caking inhibiting component of an alkyl aryl sulfonate detergent composition. Before we pass to the resolution of this issue, it is necessary to consider and dispose of some subsidiary issues which have been raised.

Both the board and the examiner have suggested that claim 3 of the Lewis patent is broad enough to cover all alkyl sulfates and, therefore, directly anticipates the claim at bar. Claim 3 reads as follows:

"3. A non-caking detergent composition containing an alkali metal salt of a monoalkyl benzene sulfonic acid and an alkyl sulfate *as the active ingredients*, the ratio by weight of alkyl sulfate to sulfonic acid salt being in the range 10:90 to 30:70." [Emphasis ours.]

It is clear to us from reading the claim as well as the specification, that the expression "active ingredients" makes reference to detergent activity. Although the higher alkyl sulfates, those of Lewis, are detergents, the sodium methyl sulfate of the instant application is not, and as such does not fall within the terms of this claim.

A novel argument has been presented here to support the solicitor's attempt to have the Korpi et al. patent,[1] stand as prior art, despite the specific holding of the board that it "is no longer a reference for any of the appealed claims." The Korpi et al. patent has claims drawn solely to processes for preparing detergent compositions having reduced tendencies to cake, those compositions comprising alkyl aryl sulfonates and the $C_1$ to $C_6$ alkyl sulfates. *If* this patent were available as prior art, it would be a direct anticipation of the claims at bar.

1. U. S. Patent No. 2,742,435, issued April 17, 1956, to the assignee of the appealed Mills application, Procter & Gamble Company, on an application filed May 22, 1952.

Appellant filed a Rule 131, 35 U.S.C. Appendix, affidavit swearing back of the May 22, 1952 filing date of the Korpi et al. patent. That affidavit made reference only to the methyl sulfate-containing composition as having been invented by appellant prior to the Korpi et al. filing date, there being no indication that prior to that date appellant produced a detergent composition containing the $C_2$ to $C_6$ alkyl sulfates disclosed therein. Because of that the Patent Office, in a supplemental brief, states:

"* * * that the disclosure of other species of alkyl sulfates in the Korpi et al. patent is prior art against the appealed claims, and that the last two sentences of the decision of the Board proper [i. e., Korpi et al. is not a reference for any of the claims] must be construed as holding only that Korpi et al. is not anticipatory of the species (methyl sulfate) to which the appealed claims are limited."

■ The board, in clear, unequivocal and unambiguous language, held that Korpi et al. was not prior art against any of the claims on appeal. We can find nothing in the board's opinion to which can be attributed the limited meaning now attempted to be engrafted thereon by the solicitor. The board's holding that the Korpi et al. patent was not available as a reference against the claims forecloses us from applying it against those claims. See In re Bloomer, 178 F.2d 407, 37 CCPA 770.

With respect to the main issue herein, the board stated:

"The rejection on Lewis is based on the proposition that appellant's methyl sulfate caking inhibitor is a member of the same homologous series as the alkyl sulfates of the reference. According to the examiner it would be expected that the anticaking function would be one common to all alkyl sulfates."

The board's final conclusion was:

"We do not think appellant has successfully rebutted the *legal presumption* that his methyl sulfate, an admitted homolog of the alkyl sulfates of the reference, is but the obvious and unpatentable equivalent of the other members in this series. In re Henze, 37 C.C.P.A. 1009; * * * 181 F(2d) 196; 85 USPQ 261." [Emphasis ours.]

■ Where, as here, the invention for which a patent is sought relates to one member of an homologous series and the disclosure of the prior art is of a non-adjacent member of the series. In re Henze, 181 F.2d 196, 37 CCPA 1009, is not authority for a "legal presumption" of obviousness of the claimed invention.

On the record before us, to reach the conclusion reached by the board, we are required in some way to bridge the factual gap between the Lewis disclosure of the $C_8$ to $C_{12}$ alkyl sulfates and applicant's claim for use of the $C_1$ alkyl sulfate with respect to a specific property, i. e., the inhibiting of caking in a detergent composition containing an alkyl aryl sulfonate detergent. The board and the examiner have substituted what the board terms a "legal presumption" for factual data, which is missing from the record, and without which a proper decision as to obviousness cannot be made.

The extent to which both the examiner and the board relied upon this "legal presumption," rather than upon facts, to bridge the gap between the $C_1$ and the $C_8$ to $C_{12}$ alkyl sulphates, is apparent from the following brief review of portions of the proceedings in the Patent Office.

The examiner, when applying the Lewis patent to support the rejection, stated:

"No invention is seen in trying a lower homolog of the [alkyl sulfate] series and finding it useful for the same purpose."

In a subsequent office action he stated a premise which is adhered to in his answer that

"* * * it would appear that the anti-caking function would be one common to the alkyl sulfates broad-

ly, that is, those having 1–12 carbon atoms in the alkyl group."

The board stated:

"The rejection on Lewis is based on the proposition that appellant's methyl sulfate caking inhibitor is a member of the same homologous series as the alkyl sulfates of the reference. According to the examiner it would be expected that the anti-caking function would be one common to all alkyl sulfates."

The board's final conclusion is, "appellant has [not] successfully rebutted the *legal presumption* that his methyl sulfate, an admitted homolog of the alkyl sulfates of the reference, is but the obvious and unpatentable equivalent of the other members in this series." [Emphasis added.] The Henze case, although cited by the board in support of this statement, is not authority for such a position.

In the Henze case, this court considered claims drawn to members of a homologous series *next adjacent* a prior art member of the series. One of the claims included 5-propoxymethyl-5-phenylhydantoin whereas the prior art disclosed 5-ethoxymethyl-5-phenylhydantoin. *Inter alia* this court stated in 181 F.2d on page 201, on page 1015 of 37 CCPA:

"In effect, the nature of homologues and the close relationship the physical and chemical properties of one member of a series bears to adjacent members is such that a presumption of unpatentability arises against a claim directed to a composition of matter, the adjacent homologue of which is old in the art. The burden is on the applicant to rebut

that presumption by a showing that the claimed compound *possesses* unobvious or unexpected beneficial properties not actually *possessed* by the prior art homologue."

The term "presumption of unpatentability," as it is used in the Henze case, refers to an inference of fact.[2]

In discussing "presumptions," Wigmore on Evidence, 3rd Edition (1940), states:

"A presumption, as already noticed, is in its characteristic feature a rule of law laid down by the judge, and attaching to one evidentiary fact certain *procedural consequences* as to the duty of production of other evidence by the opponent. It is based, in policy, upon the probative strength, as a matter of reasoning and inference, of the evidentiary fact; but the presumption is not the fact itself, nor the inference itself, but the legal consequence attached to it. But, the legal consequence being removed, the inference, as a matter of reasoning, may still remain; and a 'presumption of fact', in the loose sense, is merely an improper term for the rational potency, or probative value, of the evidentiary fact, regarded as not having this necessary legal consequence. 'They are, in truth, but mere arguments,' and 'depend upon their own natural force and efficacy in generating belief or conviction in the mind.' * * *" (Sec. 2491)

In the Henze case, this court went to a considerable length to safeguard applicants against the observed tendency of the Patent Office to freeze into legal rules of general application what, at best, are statements applicable to particular fact

---

2. See Wigmore on Evidence, 3rd Ed. (1940) § 2487 and § 2491. By presumption, Wigmore refers to a rule of law which creates for the opponent a duty of producing evidence in default of which he loses as a matter of legal ruling. That case is to be distinguished from the case where the proponent has produced an overwhelming mass of evidence and on the basis of this evidence the judge requires the opponent to produce evidence in the absence of which a verdict is directed for the proponent. In the first case, the inference from specific evidence to a specific fact is created by rule of law. In the second case the inference from the mass evidence to the fact is made by surveying the evidence adduced.

situations. Thus, the "presumption of unpatentability" referred to in the Henze case, was limited to a claim directed to a composition of matter (a new compound), the *adjacent* homologue of which was old in the art.

After pointing out how this "presumption" placed a burden on the applicant, the court even suggested certain types of evidence which applicant could produce to overcome this evidentiary burden and further concerned itself with limiting the types of proofs which could be called for by the Patent Office when it said:

> "This does not mean that in every case the Patent Office would be justified in exacting empirical data from an applicant respecting the properties of the prior art homologue tested under the same conditions and limitations as are set forth for the claimed compound where the reaction of the old compound under those conditions is a well established fact of general cognizance in the art." 181 F.2d at page 201, 37 CCPA at page 1015.

The court further stated:

> "The appellant was not refused a patent *in limine* but was only placed under a reasonable requirement to overcome a presumption reasonably raised and which he could reasonably be expected to meet. * * * The Patent Office as the public's representative has the right to require such evidence of invention as is suitable to dissolve a presumption of unpatentability arising out of the nature of the subject matter where the criteria raising the presumption, as here, are of universal acceptance by those skilled in the art involved." 181 F.2d at page 201, 37 CCPA at page 1016.

■ We do not agree with the board that the Henze case established the "legal presumption" for which it was cited. What the Henze case established is that there was an *inference of fact* that the *adjacent homologue* of the known chemical compound was unpatentable, and that such *inference of fact* placed the *burden of persuasion* on the applicant who asserted the contrary.

Here we are concerned with the issue of patentability which arises from appellant's use of the first or 1 carbon atom member of an homologous series wherein only the 8 to 12 carbon atom members are disclosed in the Lewis reference. The Henze case, characterized as "a reasonable requirement" that applicant overcome a "presumption reasonably raised and which he could reasonably be expected to meet" when applied to an *adjacent* homologue. This limitation was placed on the "presumption of unpatentability" referred to in the Henze case, because the court clearly recognized the dangers in substituting "legal presumptions" for scientific facts in all cases in which homologues, no matter how remote from each other, are involved. Thus, the court points out, reaffirming what it said in a prior opinion,[3] "whether invention exists over prior art isomers and homologues is a question to be decided in each case."

It is very significant that neither the examiner nor the board has attempted to point to anything in the record or otherwise from which it can be determined *as a fact* that the mere existence of a homologous relationship between compounds as widely separated as 1 and "8 to 12" will support a "reasonable" "presumption of unpatentability" with respect to a specific use.

Whether chemical theory may support the position of the examiner and the board in the present case is *not* before us. The position of the board is predicated on nothing more than the "legal presumption" as authority for which it cites the Henze case.

■ If the Patent Office wishes to rest a rejection on chemical theory, it is its duty to support its case with ade-

3. In re Hass et al., 141 F.2d 127, 129, 31 C.C.P.A. 903, 907.

quate evidence of the existence and meaning of that theory. Homology provides for the chemist a convenient system of structural classification. Inherent in that system are *differences* as well as similarities in the properties and reactions of the members of any given homologous series.

A chemist, and it is from the standpoint of a chemist skilled in this art that the question of obviousness must be resolved, would consider the differences as well as the similarities in the properties and reactions of the members of any given homologous series. He also would consider that in the case of adjacent homologues similarities would be more likely than where the homologues are farther apart in the series. The "legal presumption" as here applied by the board precludes making the factual evaluation which a chemist would make in a case such as the present. Homology *per se* should, therefore, be treated as a chemist would treat it, being nothing more than a fact which must be considered with all other relevant facts before arriving at the conclusion of "obviousness" specified in 35 U.S.C. § 103.

We are unable to determine from the record what the board's conclusion would have been if the Lewis reference had been evaluated in accordance with the principles set forth in this opinion. We do not think we should undertake a *de novo* investigation of the patentability of the appealed claims without such an evaluation by the Patent Office. Accordingly, since we are of the opinion that the grounds advanced by the board do not properly support the rejection of the claims, the decision appealed from is *reversed* and the application is *remanded* for further proceedings consistent with the views expressed herein.

Reversed and remanded.