51 CCPA

**Application of Bill ELPERN.**
**Patent Appeal No. 7031.**

United States Court of Customs
and Patent Appeals.
Jan. 23, 1964.

Almond, J., and Worley, C. J., dissented.

Laurence & Laurence, Albert Tockman, Washington, D. C. (Dean Laurence and Herbert I. Sherman, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

MARTIN, Judge.

This is an appeal from a decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 1, 3, 5, 6, 10, 17 and 18 of appellant's application serial No. 794,253, filed February 19, 1959, for 1, 2-BIS(SUBSTITUTED PHENYL)-3, TERTIARY-AMINO-1-PROPANOLS. Eleven claims have been allowed.

The following appealed claims are representative:

"1. Compounds having the formula

$$Ar-\underset{\underset{OH}{|}}{\overset{\overset{R}{|}}{C}}-\underset{\underset{CH_2N=B}{|}}{CH}-Ar'$$

wherein Ar and Ar' represent phenyl substituted by from one to three members of the group consisting of lower-alkoxy, lower-alkylmercapto and halogen; R represents a member of the group consisting of alkyl having from four to ten carbon atoms, cycloalkyl having 5–6 ring members, cycloalkyl-lower-alkyl having 5–6 ring members, phenyl-lower-alkyl, and phenyl substituted by from one to three members of the group consisting of lower-alkoxy and lower-alkylmercapto; and N=B represents a member of the group consisting of di-lower-alkylamino, 1-piperidyl, 1-pyrrolidyl, 4-morpholinyl, lower-alkylated 1-piperidyl, lower-alkylated 1-pyrrolidyl and lower-alkylated 4-morpholinyl.

10. 2, 3-Bis(4-methoxyphenyl)-5-methy-1-(1-piperidyl)-3-hexanol.

17. 1, 1, 2-Tris(4-methoxyphenyl)-3-dimethyl-amino-1-propanol.

18. 1, 1, 2-Tris(4-methoxyphenyl)-3-(1-piperidyl)-1-propanol."

Claims 3, 5 and 6, which are subgeneric to claim 1, are, in turn, generic to species claims 10, 17 and 18, respectively.

The references relied on are:

Denton et al. I 2,515,700 July 18, 1950

Stoll et al. 2,599,497 June 3, 1952

Adamson 624,118 May 27, 1949 (British Patent)

Denton et al. II, Journal of the American Chemical Society, Vol. 71, page 2051 (1949)

As the appealed claims indicate, this application relates to a group of tertiary-amino-1-propanols useful as cardiac anti-accelerators, coronary dilator agents and pituitary inhibitors. Both the Patent Office and appellant agree that the claims on appeal include compounds:

$$\text{(I)}$$

wherein A may be an alkyl radical containing 4 to 10 carbon atoms or a phenyl substituted by a lower alkoxy, and B is 1-piperidyl i.e. $-N\begin{smallmatrix}CH_2CH_2\\CH_2CH_2\end{smallmatrix}CH_2$ or a diloweralkyl amino, e. g. dimethyl-amino.

The Denton et al. references teach amino alcohols useful as antispasmodics and local anesthetics. These alcohols include compounds depicted as:

$$\text{(II)}$$

with A and B having the same significance as A and B in structural formula (I).

Stoll et al. describes basic stilbene derivatives of the formula:

$$\text{(III)}$$

wherein R represents lower alkyl radicals, or both R's together with the nitrogen atom represent a piperidino radical, and R′ represents lower alkyl or benzyl radicals.

An intermediate used in the preparation of the basic stilbene derivatives "may be" depicted as:

$$R'O-\bigcirc-\underset{\underset{OH}{|}}{\overset{\overset{C_2H_5}{|}}{C}}-\underset{\underset{\underset{\underset{B}{|}}{CH_2}}{\overset{|}{CH_2}}}{CH}-\bigcirc-OR' \qquad (IV)$$

wherein B can have the same meaning as the $B^1$ in formulae (I) and (II) and R' represents a lower alkyl or benzyl radical.

Adamson[2] relates to the preparation of N-disubstituted $\gamma,\gamma$-disubstituted-$\gamma$-hydroxypropylamines of the formula

$$\underset{R^2}{\overset{R^1}{>}}\underset{\underset{OH}{|}}{C}-\underset{\underset{R^3}{|}}{CH}-\underset{\underset{R^4}{|}}{CH}-N\underset{R^6}{\overset{R^5}{<}} \qquad (V)$$

wherein $R^1$ and $R^2$ are identical and are aryl, aralkyl or cycloalkyl groups optionally substituted, for example, by alkyl or alkoxy groups, $R^3$ may be hydrogen or alkyl, $R^4$ may be hydrogen, alkyl or aryl (optionally substituted for example by alkyl or alkoxy groups), $R^5$ and $R^6$ are the same or different and may be alkyl, aryl or aralkyl or —$NR^5R^6$ may denote the piperidino-pyrrolidino-or morpholino-groups.

The board affirmed the examiner's rejection of claims 1, 3 and 10 "on the Denton et al. I and II and Stoll et al.

references." It also affirmed the examiner's rejection of claims 5, 6, 17 and 18 "over Denton et al. I." In so affirming, the board stated:

"The Examiner recognizes that the two phenyl groups of the bis-phenyl compounds of Denton et al. I and II do not have a methoxy substituent, but he takes the position that such modification is obvious, particularly in view of Adamson II, who shows analogous compounds of the type

$$\underset{R^2}{\overset{R^1}{>}}\underset{\underset{OH}{|}}{C}-\underset{\underset{R^3}{|}}{CH}-\underset{\underset{R^4}{|}}{CH}-N\underset{R^6}{\overset{R^5}{<}} \qquad [(V)]$$

'where $R^1$ and $R^2$ are identical and are aryl, aralkyl or cycloalkyl groups

optionally substituted for example by alkyl or alkoxy groups, $R^3$ may be·

1. For ease of readability, in depicting the structural formulæ, we have used symbols A and B.

2. This patent is designated as "Adamson II" by the examiner and board.

hydrogen or alkyl, $R^4$ may be hydrogen, alkyl or arl [aryl] (optionally substituted for example by alkyl or alkoxy groups), $R^5$ and $R^6$ are the same or different and may be alkyl, aryl or aralkyl or $-NR^5R^6$ may denote the piperidino-or morpholino-groups.' * * * In a sense, the Adamson II compounds may be regarded as being related to certain of the presently claimed compounds as position isomers, the three phenyl (or alkoxy-phenyl) groups being located on the 1,1, and 3 carbon atoms rather than on the 1,1, and 2 carbon atoms, numbering the hydroxyl carbon as 1. As for Stoll et al., the Examiner recognizes that the hydroxyl carbon has a methyl [an ethyl] group rather than a higher alkyl group, such as isobutyl, attached thereto and that there is an extra methylene radical between the tertiary amine and the first substituted carbon atom, but he is of the opinion that these variations are of a homologous nature which are obvious to chemists of ordinary skill."

Appellant argues that the compounds of Denton et al. always differ from his compounds in that the two phenyl groups are each unsubstituted while both of the phenyl groups in his compounds are lower-alkoxy-substituted. Appellant contends that Denton et al., in describing their compounds, give no indication that either of these two required phenyl groups could or should, out of the hundreds of possible substituents known, be substituted by a lower alkoxy.

As to Stoll et al., appellant contends that the compounds therein must have an ethyl $(-C_2H_5)$ radical [3] while the closest carbon substituent in the corresponding position in appellant's compound is a lower alkyl containing 4 carbon atoms. Furthermore, appellant argues that in the compounds of Stoll et al. there is an extra methylene $(-CH_2-)$ group in the chain "above the nitrogen (N) atom." [4]

Appellant further contends that affidavits submitted under Rule 132 rebut any possible presumption that the references' compounds made the compounds of the appealed claims obvious.

Since the cited art does not disclose the claimed compounds, the issue is whether the cited art would, at the time the invention was made, make the claimed compounds obvious to a person having ordinary skill in the art to which the invention pertains.

*The Denton et al. references*

The Denton et al. (I) patent discloses basic 1,2-diphenyl-propanols, the introductory portion of the reference stating:

"The present invention is primarily concerned with a novel group of physiologically-active amino alcohols. More specifically, the invention is concerned with alcohols of the general type formula

$[(VI)]$

---

3. See formula (IV).
4. This is evident from a comparison of formulae (I) and (IV) wherein B can be either

or a

wherein 'R' is hydrogen, an alkyl, an aryl radical, a 1–6 membered aliphatic radical, phenyl, or a hydroxy, alkoxy or halogen-substituted phenyl radical; and 'Am' represents a tertiary amino radical."

It is clear that the two phenyl groups [5] in Denton et al.'s propanols have no lower alkoxy substituents; and a careful analysis of the patent fails to show even a suggestion of such modification for any purpose. In fact, there is absolutely no implication in the Denton et al. patent that the phenyl groups depicted in formula (VI) can or should be substituted in any manner. Rather as shown by the patent's descriptive portion, examples and claims, it seems to us that the patentees' are concerned only with basic 1, 2-diphenyl-propanols devoid of substituents on the phenyl groups.

In contrast, careful analysis of appellant's application shows that he has always emphasized a specific number and kind of substituents attached to the two phenyl groups of his bisphenyl compounds. Appellant's application states:

"This invention relates to substituted diphenyl-ethane derivatives, and is particularly concerned with 1, 2-bis (*substituted* phenyl)-3-tertiary-amino-1-propanols further substituted in the 1-position by a hydrocarbon radical having from four to about ten carbon atoms or by a phenyl radical substituted by lower-alkoxy or lower-alkylmercapto radicals. * * *

"Among the compounds included within the scope of my invention are those having the general formula

$$Ar\!-\!\underset{\underset{OH}{\mid}}{\overset{\overset{R}{\mid}}{C}}\!-\!\underset{\underset{CH_2N=B}{\mid}}{CH}\!-\!Ar'$$
I

wherein *Ar and Ar' represent phenyl radicals substituted by from one to three radicals selected from the class consisting of lower-alkoxy, lower-alkylmercapto and halogen:* * * *"
[Emphasis ours.]

The examiner has made reference to an Adamson patent to show that the inclusion of lower alkoxy groups in the Denton et al. compounds would be an obvious modification.

Although the appealed claims were rejected solely "on the Denton et al. I and II and Stoll et al. references" and "over Denton et al. I," the examiner considered that no "invention" exists in the nuclear methoxy substituted derivatives of the compounds of Denton et al. references because Adamson "teaches the equivalence of hydrogen and alkoxy as nuclear phenyl substituents on compounds analogous to those claimed." In the factual situation before us, we do not find Adamson to be pertinent.

As evidenced by formula (V), Adamson teaches the equivalency of hydrogen and alkoxy as nuclear phenyl substituents, the phenyl groups located on the *1,1* or *1,1,3* or *3* carbon atoms of the propanols. The Denton et al. patent relates to *1,2*-diphenyl-propanols, the phenyl groups being unsubstituted.[6] Moreover, Adamson is restricted *exclusively* to γ,γ-disubstituted-γ-hydroxy-propylamines. In contrast in Denton et al.'s propanols, the carbon atom bonded to the alcoholic radical may also be bonded to a hydrogen, i. e. in formula (VI) R may be hydrogen. Accordingly

---

5. The phenyl groups are designated

as ⬡— in the structural formulæ

depicted in the Denton et al. patent.

6. Although the board considered the Adamson compounds "as being related to certain of the presently claimed compounds as position isomers," there is no rejection of the appealed claims on the Adamson reference.

we do not think that Adamson teaches the equivalence of hydrogen and alkoxy as nuclear phenyl substituents on the compounds shown in the Denton et al. patent and therefore we will not sustain the examiner's rejection of claims 1, 3, 5, 6, 10, 17 and 18 on the Denton et al. references.[7]

*The Stoll et al. patent*

The board has sustained the examiner's rejection of claims 1, 3 and 10 on the Stoll et al. patent based on an "intermediate" depicted by formula (IV). As the board indicated, the examiner recognized (1) that the hydroxyl carbon in formula (IV) has an ethyl ($-C_2H_5$) group rather than a higher alkyl group, such as the isobutyl group, attached thereto as in appellant's claimed compounds, and (2) that there is an extra methylene radical between the tertiary amino radical and the first substituted carbon atom.[8] However, the board continued, the examiner was of the opinion that these variations are of a "homologous" nature which are obvious to chemists of ordinary skill.

Although the examiner has not so stated, we are apparently in the field of what has come to be called the "Hass-Henze Doctrine." See In re Papesch, 315 F.2d 381, 50 CCPA 1084. As this court said in Papesch, the "Hass-Henze Doctrine" was evolved by the bar from this court's opinions in the three cases In re Hass et al., 141 F.2d 122, 31 CCPA 895; In re Hass et al., 141 F.2d 127, 31 CCPA 903; and In re Henze, 181 F.2d 196, 37 CCPA 1009. In the Hass and Henze cases, this court considered claims drawn to members of a homologous series *next adjacent* a prior art member of the series. In the factual situation before us and comparing structural formulæ (I) and (IV), we do not have such a relationship. Where an invention for which a patent is sought is a compound which is a member of an homologous series and the prior art discloses a *nonadjacent* member of that series, we do not consider the Hass and Henze cases authority for the legal presumption of obviousness of the claimed invention. See In re Mills, 281 F.2d 218, 47 CCPA 1185.

Accordingly in view of the admitted structural differences between formulæ (II) and (IV) and appellant's formula (I), we will not sustain the examiner's rejection of claims 1, 3, 5, 6, 10, 17 and 18 on the Denton et al. and Stoll et al. references.

Since we are satisfied that the differences apparent in the structural formulæ of the compounds of the appealed claims, when compared with the structural formulæ of the references' compounds relied on by the Patent Office are sufficient to make appellant's compounds unobvious to a chemist of ordinary skill in the art, we need not consider the affidavits allegedly demonstrating unexpected properties.

For the foregoing reasons, the decision of the board is reversed.

Reversed.

SMITH, Judge (concurring).

While I agree with the opinion of the court that there are structural differences between the compounds of the appealed claims and the compounds of the prior art references, I think the unobviousness of the claimed invention rests on a broader base than such differences alone. Here, the "subject matter as a whole" which 35 U.S.C. § 103 requires us to examine involves also a consideration of the specific pharmacological properties asserted for the compounds. E. g., In re Papesch, 315 F.2d 381, 50 CCPA 1084. Thus the specification discloses the use of compounds having this novel structure as cardiac anti-accelerators which, as appellant points out, are useful in treating hypertensive conditions. Appellant also points out that the novel compounds are useful as coronary dilator agents and are

---

7. Denton et al. II was considered by the board to be cumulative to Denton et al. I and we agree.

8. This is easily seen by a comparison of formulæ (I) and (IV), B in both formulæ representing a tertiary amino radical.

much less toxic than a previously used drug. Actual test data set forth in the affidavits of record show the coronary dilator activity and the toxicity of the claimed compounds when tested by a recognized test procedure which compares these activities with those of the standard drug, papaverine. While the data set forth in the affidavits have been criticized by the Patent Office because of the selection of compounds which were tested, I find it unnecessary to consider this aspect of the proofs. The fact is that the prior art relied upon to support the rejection does not set forth either the claimed structures or any other compound disclosed as having the particular physiological properties of the claimed compounds. Thus, I find no prior art teachings from which I could consider the differences between the claimed compounds and those of the prior art to be such that the subject matter as a whole would have been obvious to one of ordinary skill in this art.

ALMOND, Judge, with whom WORLEY, Chief Judge, joins (dissenting).

It is with deference and regret that I find myself in disagreement with the decision of the majority.

The majority opinion states that none of the references of record anticipates the claimed compounds. I agree. But direct anticipation by a single patent was never in issue here because the rejection was based on a combination of references. At the outset, it is important to note that the appealed claims, the Denton et al. references, and the Adamson reference all show diphenyl-tertiary-amino-propanols.

Graphically presented, the closest compounds of Denton et al., Adamson and the appealed claims are:

Appealed claims

Denton et al.

Adamson

There seems to be no question that the Denton et al. references show everything claimed except the lower alkoxy substituent on the phenyl groups. The Board of Appeals recognized this deficiency, but said, "such modification is obvious, particularly in view of Adamson." Adamson differs from the claimed structure only in the location of one of the substituted phenyls in diphenyl-tertiary-amino-propanols. Since the art is taught by Adamson to substitute a lower alkoxy radical for a hydrogen in a phenyl group in a position isomer of the claimed compounds, such a substitution in the Denton et al. compounds would be obvious in the absence of other evidence tending to prove that it is unobvious.

Appellant understood the position of the examiner based on the similarity of structural formulae between the claims and the prior art and submitted affidavits for the purpose of proving that new and unexpected results were obtained with

the new compounds. The affidavits were not accepted by the examiner or the board because they did not compare the prior art compounds most resembling those compounds encompassed by the claims. The argument before this court was based largely on the proposition that the applicant need not prove superiority over all of the prior art, but only over so much as he chooses to compare. Fortunately, the prevailing opinion does not adopt this proposition which would permit an applicant to test a number of prior art compounds more or less related to those of his claims and pluck the one most different for comparison in an affidavit. However, the concurring opinion would accept the proofs of the affidavit. Since a compound claim, to be patentable, must be unobvious in view of *all* of the prior art compounds, appellant should be required to produce a comparative showing as to the closest prior art compounds, if challenged with reasonable justification during prosecution.

The majority reaches its decision on the basis of what it terms the "Hass-Henze Doctrine." It seems to me that "doctrines" and "legal presumptions" are too inflexible for use in cases of closely related chemical structure. Whatever "doctrine" was laid down in In re Henze, 181 F.2d 196, 37 CCPA 1009, was surely tempered by In re Mills, 281 F.2d 218, 47 CCPA 1185. The Henze case spoke of "legal presumptions" just as the majority opinion does. This court said in Mills:

" * * * The 'legal presumption' as here applied by the board precludes making the factual evaluation which a chemist would make in a case such as the present. Homology *per se* should, therefore, be treated as a chemist would treat it, being nothing more than a fact which must be considered with all other relevant facts before arriving at the conclusion of 'obviousness' specified in 35 U.S.C. 103." [281 F.2d at 224, 47 CCPA at 1192]

Another case attacking the "doctrinal" approach to homology is In re Riden et al., 318 F.2d 761, 50 CCPA 1411, which said: "The determination of obviousness is not the mechanistic overlaying of chemical formulae to observe whether a difference greater than a methylene group or a chlorine atom exists," which is precisely what was done by the majority as to formulae (I) and (IV). This decision also quoted with approval the statement in Mills that statements applicable to particular fact situations should not be frozen into "rules of general application."

The differences and similarities in structure are simply factors to be considered along with whatever other evidence is in the case. The evidence of different properties here is unacceptable because of remoteness. There is no satisfactory showing of unobvious properties possessed by the claimed compounds and not by at least some of the closest prior art compounds, and no other evidence is in the record showing the claimed compounds to be unobvious. Since the structural similarity in the primary references is so close, and the suggestion of substitution in the secondary reference so clear, the subject matter as a whole would have been obvious to one skilled in the art.

I would affirm.