54 CCPA
**Application of Arthur F. WAGNER and Karl A. Folkers.**

**Patent Appeal No. 7689.**

United States Court of Customs and Patent Appeals.

Feb. 9, 1967.

Harry E. Westlake, Jr., Rahway, N. J. (John P. Floyd, New York City, I. Louis Wolk, Rahway, N. J., of counsel), for appellants.

Joseph Schimmel, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, SMITH, and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.*

SMITH, Judge.

We are here concerned with the obviousness, 35 U.S.C. § 103, of a joint invention [1] of appellants relating to new chemical compounds and to compositions containing such compounds for inhibiting the growth of poliomyelitis viruses.

---

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. In Application No. 149,214, filed November 1, 1961. No claims have been allowed.

The Board of Appeals affirmed the examiner's final rejection of appealed claims 1 to 10.

The specification points out that:

Science is beginning to secure control of poliomyelitis by means of immunization vaccines. There is, however, another approach to the control of this disease and especially the spread of its viruses. This is to find compounds capable of inhibiting the growth of the viruses and of preventing cell damage therefrom.

It is appellants' position that their invention provides compounds which do so inhibit the growth of the viruses.

Claims 1 and 6 are representative and are here reproduced:

1. A compound of the structure—

in which X and Y are each selected from the group consisting of hydrogen and lower alkyl, at least one of X and Y being lower alkyl.

6. A method for inhibiting the growth of ECHO 6 and poliomyelitis viruses which comprises applying to cells infected with such virus a composition having as an active ingredient a compound of the structure

in which X and Y are each selected from the group consisting of hydrogen and lower alkyl, at least one of X and Y being lower alkyl.

As claimed, the invention is embodied in compounds defined in claims 1–5. As claimed in claims 6–10 the invention is embodied in "A method for inhibiting the growth of ECHO 6 and poliomyelitis viruses" which uses a composition which contains as an active ingredient the compounds of claims 1–5.

The references relied on to support the rejection are:

Siegart, 79 Amer. Chem. Soc. 4391 (1957).

Hollinshead [I], 52 Chem. Abst. 14845 (1958).

Other references cited by the examiner for evidentiary purposes are:

Hollinshead [II], 123 J. Pharm. Exper. Therap. 54 (1958).

Tamm, 113 J. Exper. Medicine 638 (1961).

The examiner rejected the claims as unpatentable over Siegart and Hollinshead I.

The factual differences between the invention claimed and the prior art are discussed in appellants' brief as follows:

## THE RELATION BETWEEN THE CLAIMED COMPOUNDS AND THE PRIOR ART

The claimed compound closest to the prior art is one of the structure

COMPOUND A
[Claim 3]

\* \* \* The cited art consists of the Compound B of the structure

COMPOUND B

cited by the Examiner and the Board, and the Compound C of the structure

COMPOUND C

which was relied on by Applicant, and cited by the Examiner to show the state of the art. The ordinary numbering of the places of substitution in this ring system is shown above in the structure of Compound B.

———◆———

The solicitor argues the compound of claim 2, wherein $CH_3$ is substituted for H at the α position in Compound B, is the closest claimed compound to the prior art.

We will inject at this point the board's summary of the examiner's position:

The Examiner has rejected the appealed claim as being obvious over Siegart et al. and Hollinshead et al. Since the modification of a compound by the addition of one or more methyl groups is well known and thus obvious, and that Siegart et al. by their disclosure of the interchangeable use of methyl and hydrogen substituents in 2-hydroxy-alkylbenzimidazoles, albeit not specifically teaching compounds within the scope of the instant claims, would indirectly suggest the claimed compounds.

Appellants' position in regard to Siegart is that it describes the preparation of various compounds, analogs of which have been suggested to be "growth promoters." The compounds prepared include 2-α-hydroxyethylbenzimidazole of the structure

COMPOUND D

880

and 2-α-hydroxyisopropylbenzimidazole of the structure

COMPOUND E

---

In addition to Siegart, the Patent Office placed reliance on the other cited art as follows. Hollinshead I discloses that Compound B inhibits the growth of polio virus and influenza virus. Hollinshead II, the original article upon which Hollinshead I is based, is used for its additional disclosure that Compound B is effective against adenovirus. Tamm was relied upon because it discloses the virus inhibitory activity of various 2 ($\alpha$-hydroxybenzyl) benzimidazoles, among other types of benzimidazoles. Such activity with respect to Poliovirus Type 2 is summarized in Table III.

**TABLE III**

*Poliovirus Type 2 Inhibitory Activity and Selectivity of Bensimidazole and Bensotriazole Derivatives in Monkey Kidney Cells in Vitro*

| Group | No. | Benzimidazole derivative | 75 per cent virus inhibitory concentration (VIC) | Relative inhibitory activity (RIA) | 3+ toxic concentration (TC) | Relative toxicity (RT) | Selectivity ratio (SR) | Relative selectivity (RS) |
|---|---|---|---|---|---|---|---|---|
| | | | $\mu M$ | | $\mu M$ | | | |
| | 1 | Benzimidazole | 2800 | 1 | 5200 | 1 | 1.9 | 1 |
| A | 3 | 5-Sulfonamido | 2600 | 1.2 | >8800 | <0.59 | >3.7 | >1.9 |
| | 6 | 5-Benzimidazolesulfonanilide | 130 | 22 | >270 | <19 | >2.1 | >1.1 |
| | 7 | 5-Benzimidazolesulfon-(6'-toluidide) | 96 | 29 | >600 | >13 | >6.2 | >2.2 |
| B | 9 | 5-(4'-Toluenesulfonamido)- | 21 | 130 | >60 | <87 | >2.9 | >1.5 |
| | 10 | 5-(3',4'-Dichlorobenzenesulfonamido)- | 12 | 230 | >100 | <52 | >8.3 | >4.4 |
| | 11 | 5-(3',4'-Dichlorobenzenesulfonamido)-1-(3'',6''-dichlorobenzenesulfonyl)- | 10 | 280 | >100 | <52 | >10 | >5.3 |
| C | 13 | 5-Trifluoromethyl | 350 | 8.0 | >450 | <12 | >1.3 | >0.68 |
| F | 29 | 2-Aminomethyl-5,6-dichloro | 130 | 22 | 950 | 55 | 7.3 | 3.8 |
| | 30 | 2-(β-Aminoethyl)-5,6-dichloro | ~60 | ~47 | ~60 | ~87 | ~1 | ~0.53 |
| | 31 | 2-(γ-Aminopropyl)-5,6-dichloro | ~60 | ~47 | ~60 | ~87 | ~1 | ~0.53 |
| G | 33 | 2-Hydroxymethyl | >3800 | <0.74 | >3800 | <1.4 | — | — |
| | 34 | 2-(α-Hydroxyethyl)- | >3500 | <0.80 | >3500 | <1.5 | — | — |
| | 35 | 2-(α-Hydroxybenzyl)- | 36 | 78 | >1100 | <4.7 | >31 | >16 |
| | 36 | 2-(α-Hydroxybenzyl)-5-chloro | 22 | 130 | >640 | <8.1 | >29 | >15 |
| | 37 | 2-(α-Hydroxybenzyl)-5,6-dichloro | 140 | 20 | >1300 | <4.1 | >9.1 | >4.8 |
| | 38 | 2-(α-Hydroxybenzyl)-5,6-dimethyl | 760 | 3.8 | >1000 | <5.2 | >1.4 | >0.74 |
| | 39 | 2-Benzoyl | 760 | 3.8 | >1100 | <4.7 | >1.5 | >0.79 |
| | 40 | 2-Benzyl | 95 | 29 | >360 | <14 | >3.8 | >2.0 |
| | | **Benzotriazole derivative** | | | | | | |
| J | 48 | Benzotriazole | 2800 | 1 | 11000 | 0.67 | 3.9 | 2.1 |
| | 49 | 5-Chloro | 500 | 5.6 | 1600 | 3.3 | 3.2 | 1.7 |
| | 50 | 5,6-Dichloro | 73 | 38 | 260 | 20 | 3.6 | 1.9 |
| | 51 | 4,5,6-Trichloro | 23 | 120 | 50 | 100 | 2.2 | 1.2 |
| | 52 | 4,5,6,7-Tetrachloro | 8.1 | 350 | 12 | 430 | 1.5 | 0.79 |
| K | 54 | 5-Trifluoromethyl | 240 | 12 | >450 | 12 | 1.9 | 1.0 |

It is the solicitor's position that Compound G–35 there shown is Compound B of the prior art, and Compounds G–36, –37 and –38 are respectively, a 5-chloro, 5,6-dichloro and 5,6-dimethyl derivatives of this compound. Considering the respective values 78 and 3.8 shown in the table for the anti-viral activities of Compounds B and G–38, (Compound C) the latter is said to be approximately ½0 as potent as Compound B against the virus in question.

The structural differences between the claimed invention and the disclosures of the prior art are to be found in appellants' substitution of alkyl groups in specific places. As stated in the specification:

> We have found that 2-[α-hydroxybenzyl] benzimidazoles which are substituted with alkyl groups are more potent inhibitors of poliomyelitis and ECHO 6 virus than previously known compounds. These viruses are members of the class of entero-viruses, the members of which resemble one another in their reaction to these compounds, among many similar properties. We have found that alkyl groups on either the α-position of the benzyl moiety or on $N^1$ of the benzimidazole ring enhance the inhibitory activity.

The Patent Office maintains that the substitution of alkyl groups in the reference compound at the specific places as required by the claims would be obvious. There are eleven different places on which such radicals can be placed.

The invention as a whole which is in issue here, and which we must consider in resolving the section 103 issue, is a particular group of compounds which either alone or in compositions possess the property of inhibiting the growth of certain viruses and preventing cell damage therefrom. Thus, we have here an issue comparable to that before us in In re Papesch, 315 F.2d 381, 386, 50 CCPA 1084, 1091, where we stated:

> The problem of "obviousness" under section 103 in determining the patentability of new and useful chemical compounds, or, as it is sometimes called, the problem of "chemical obviousness," is not really a problem in chemistry or pharmacology or in any other related field of science such as biology, biochemistry, pharmacodynamics, ecology, or others yet to be conceived. It is a problem of *patent law*.

After reviewing the pertinent authorities referred to in the *Papesch* decision, we stated there the principle which we find to be controlling here, 315 F.2d at 391, 50 CCPA at 1097:

> From the foregoing cases it will be seen that this and other courts, both before and after the enactment of section 103, have determined the unobviousness and patentability of new chemical compounds by taking into consideration their biological or pharmacological properties. Nine of the ten cases above considered, directly and indirectly, involved such properties. Patentability has not been determined on the basis of the obviousness of structure alone. In fact, where patentability was found in the above cases it was found in spite of close similarity of chemical structure, often much closer similarity than we have here.

Here, as in *Papesch*, we think the decision of the board rests "on one fundamental error of law, namely, the failure to take into consideration the biological or pharmaceutical properties of the compounds." Ibid.

Pertinent to our resolution of the issue here is the further statement in *Papesch* that:

> From the standpoint of patent law, a compound and all of its properties are inseparable; they are one and the same thing. The graphic formulae, the chemical nomenclature, the systems of classification and study such as the concepts of homology, isomerism, etc., are mere symbols by which compounds can be identified, classified, and compared. But a formula is not a compound and while it may serve in a claim to *identify* what is being patented, as

the metes and bounds of a deed identify a plot of land, the *thing* that is patented is not the formula but the compound identified by it. And the patentability of the thing does not depend on the similarity of its formula to that of another compound but of the similarity of the former compound to the latter. There is no basis in law for ignoring any property in making such a comparison. An assumed similarity based on a comparison of formulae must give way to evidence that the assumption is erroneous. Ibid.

Thus, in resolving the issue of obviousness under section 103, we must consider the entirety of the invention claimed and compare this with what in contemplation of law would have been obvious to one of ordinary skill in this art at the time of appellants' invention.

It is the solicitor's position as stated in his brief that:

> If the Court is satisfied that the Board's holding as to structural obviousness was sound, the conclusion which will be dispositive of this appeal is the one announced in In re Lohr et al., 50 CCPA 1274, 1279, 317 F.2d 388, 137 USPQ 548:
>
> > When a new compound so closely related to a prior art compound as to be structurally obvious is sought to be patented based on the alleged greater effectiveness of the new compound for the same purpose as the old compound, clear and convincing evidence of substantially greater effectiveness is needed.

We are concerned with this use of selected language taken from our opinion in *Lohr*. All statements therein must be read in the context of that case, the essential consideration being stated in the penultimate paragraph of the opinion, 317 F.2d at 392, 50 CCPA at 1279:

> Considering all of the evidence in the record: the close structural similarity, the similar method of making the compounds, the similar properties, the same use, and the inconclusive showing of the affidavit, we are constrained to agree with the Board of Appeals that

the claimed compounds and compositions are obvious in view of the prior art.

While the above quoted statement preceded in time the decision of the Supreme Court in Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), it clearly sets forth the factual inquiry which both this court and the Supreme Court deem necessary in resolving issues of obviousness under section 103. On the *Lohr* record our inquiry established that a *factual* base existed for supporting the legal conclusion of the board that the invention was obvious under section 103.

The legal concept of obviousness under 103 cannot be frozen into set rules and concise statements of general applicability. The unanimous decision of the Supreme Court in the *Deere* case points out that the section 103 condition "lends itself to several basic factual inquiries," which are enumerated, 383 U.S. at 17, 86 S.Ct. at 694, as follows:

> * * * Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy. * * *

In *Lohr* we recognized the difficulties in making the section 103 evaluation and our experience there, as in numerous other cases involving the issue, underscores and emphasizes the further observation of the Supreme Court in *Deere*, 383 U.S. at 18, 86 S.Ct. at 694, that:

> * * * What is obvious is not a question upon which there is likely to be uniformity of thought in every given factual context. The difficul-

ties, however, are comparable to those encountered daily by the courts in such frames of reference as negligence and scienter, and should be amenable to a case-by-case development. We believe that strict observance of the requirements laid down here will result in that uniformity and definiteness which Congress called for in the 1952 Act.

These observations when applied to the facts of record here require that the decision of the board be reversed. Neither the examiner nor the board based the ultimate legal conclusions of obviousness on all the *facts* of record. Instead, their legal conclusions as to "obviousness" seem to be based on such general statements as "the modification of a compound by the addition of one or more methyl groups is well known and thus obvious." Further, "Siegart et al. by their disclosure of the interchangeable use of methyl and hydrogen substituents in 2-hydroxyalkylbenzimidazoles, albeit not specifically teaching compounds within the scope of the instant claims, would indirectly suggest the claimed compounds." How Siegart indirectly suggests the claimed compounds is not explained. It also appears that the board failed to make factual determinations in support of obviousness, as required by the *Deere* decision, for it stated in its opinion:

> We are of the opinion that appellants' showing [affidavits of record alleging facts], even if considered relevant to the determination of obviousness, is not of such a character as to negate the obviousness of the claimed class of compounds. The claimed compounds are useful for the same purpose as taught for the prior art compound and no significant increased efficiency has been shown for them. A three to five fold increase in efficacy is, in our view, of insufficient magnitude to warrant a conclusion that the claimed materials are different in kind from the one disclosed by the references. They clearly have the same general property and homologous compounds are expected to differ among them-

selves to a certain extent. We are thus unable to agree with appellants' contention that their showing establishes advantages which are different in kind. In re Lohr et al., 137 USPQ 548, 1963 CD 452. * * *

Under section 103 proof of facts by the applicants may be controverted by the Patent Office but they cannot, as here, be ignored or dismissed as irrelevant.

Underlying the decision of the board is its statement:

> * * * we consider the claimed class of compounds to be so closely related to the reference compound as to make it presumptively obvious within the meaning of 35 USC 103. * * *

It appears that this "presumption" is based on the structural relationships of the claimed compounds and Compound B of the prior art. We have recognized that such relationships must be considered in determining issues which arise under section 103 but as stated in In re Mills, 281 F.2d 218, 223, 47 CCPA 1185, 1191:

> * * * What the Henze case [In re Henze, 181 F.2d 196, 37 CCPA 1009, 85 USPQ 261] established is that there was an inference of fact that the adjacent homologue of the known chemical compound was unpatentable, and that such *inference of fact* placed the *burden of persuasion* on the applicant who asserted the contrary.

It is to be noted that in the *Mills* case we were not dealing with an adjacent homologue. Cf. Brenner v. Manson, 383 U.S. 519, 531, 86 S.Ct. 1033, 16 L.Ed.2d 69 (homologs and establishing utility).

In the present case we are not dealing solely with homology. The "similarity" in this case is predicated on alkyl substitution in one or both of two specific places in the reference Compound B. There are, however, eleven places to make such substitution, the prior art Compound C being one such possible combination of two substituents. Neither the examiner nor the board pointed to facts demonstrating that it would have been obvious to one of ordinary skill in this

art to make the substitution at those *particular* positions at which appellants have placed the substituents *so as to enhance the biological or pharmaceutical activity of the compound* instead of diminishing it as in Compound C.

■■ Appellants by a verified showing have established that there was a known inferiority of the prior art Compound C as to its biological and pharmaceutical properties. They also have verified under oath the superiority of Compound A with relation to Compound B. It seems to us, therefore, that on this record appellants have carried a "burden of persuasion" which refutes any permissible "inference" of fact upon which to predicate a legal conclusion of obviousness under section 103. Factually unsupported *opinions* of board members and examiners do not provide the *factual* basis required by the Supreme Court in the *Deere* case for the determination of obviousness under section 103. Neither can they establish a "presumption" of obviousness. These subjective opinions are of little weight against contrary evidence.

As in the *Mills* case, the examiner and the board are here taking a position "predicated on nothing more than the 'legal presumption,'" 281 F.2d at 223, 47 CCPA at 1191. They seek to rely on In re Herr, 304 F.2d 906, 50 CCPA 705, as support for this position. However, in *Herr* the evidence of unexpected properties referred to properties not disclosed in the application. No such contention can be made here in view of the data included in appellants' disclosure.

It is appellants' position that:

Any permissible inference of [obviousness] * * * must be based on what the prior art suggests will result from the changes in molecular structure involved. * * *

Whether novel chemical compounds are patentable over prior art isomers and homologues, is a question to be determined in each case. In re Hass, 31 CCPA 903, 141 F.2d 127, 60 USPQ 548, 551.

Where the relationship of the claimed compound (Compound A) to the cited compound (Compound B) is the substitution of alkyl groups in specific places, an important fact to be considered is what result was obtained from alkyl substitution in the past. * * *

The *fact* of record is that, while the cited art discloses the basic ring structure prior to appellants' invention, there also exists the *Tamm* reference which shows a related compound—the 5,6-dimethyl derivative (Compound C)—which is also an isomer of the 1, α-dimethyl derivative (Compound A) claimed herein. The reference further shows that the Relative Inhibitory Activity against poliomyelitis virus of this Compound C is 3.8 as against a figure of 78 for reference Compound B. It is thus about 1/20 as potent in this use. The claimed 1, α-dimethyl derivative (Compound A) is by verified showing five times as potent as the reference Compound B in the same test. Compound A is shown on the present record to be about 100 times as active as its known isomer, Compound C.

The only teaching in the art dealing with the effect on the growth of polio virus of alkyl substitution in any of the eleven possible points of substitution in Compound B was improperly turned by the board into support for its decision that the prior art compound made the claimed invention obvious. They characterized this prior art teaching as "an isolated example whose diminished activity may in fact be its unexpected property." There is no factual basis in the record to support this characterization.

■■ We think it is a fundamental requirement of the *Deere* decision that *all* the prior art teachings must be factually evaluated. Here this would include the compound of the *Tamm* reference. Considered as a part of the prior art, *Tamm* teaches that methyl substitution at certain positions can be expected to give diminished anti-viral activity. Appellants' teaching that certain claimed isomers enhances this activity is nowhere taught in the prior art and would, we

think, be an unobvious teaching to one of ordinary skill in the art in view of the contrary indication in *Tamm*. Prior art teachings unfavorable to the Patent Office position may not be avoided by labeling them "unexpected" as one of ordinary skill in the art would evaluate them as a whole for what they fairly disclose. In re Lunsford, 357 F.2d 385, 53 CCPA 1011.

Neither the examiner nor the board has pointed to facts of record from which we can find that the prior art teachings suggest the claimed compounds will possess enhanced anti-viral activity. The only effort in this direction appears in the board's assertion that the Siegart compounds (Compounds D and E) support its position. However, since no physiological data are given for these compounds we are unable to determine what factual support they may provide for the board's position as to appellants' invention "as a whole."

We agree with the position in appellants' brief:

\* \* \* That hydrogens can be replaced by methyl groups is so well known as to be apocryphal. [sic]. However, it needs more in the art than this to teach that putting an alkyl group on the α-carbon the one with the hydroxyl, in an α-hydroxy*benzyl*-benzimidazole, will enhance the activity. Further, the Siegart reference makes no mention of substitution on the 1-nitrogen.

Where, as here, the substitution made by appellants is shown to be possible in a large number of positions, and one example of such substitution is shown in the prior art to be detrimental, and where there is no teaching in the art that the specific position of substitution here claimed would be beneficial, the comparison between all elements of the prior art and the claimed compound demonstrates no reasonable factual basis for the board's decision. Where the teaching of that art is that two methyl substituents on the basic ring structure is detrimental in the utility contemplated, and whereas on the present record there is no

teaching that substitution in certain other spots is beneficial, one who teaches otherwise has made an unobvious contribution to the art.

To support its contrary position, the board held that the proven differences over the art do not establish "advantages which are differences in kind." Their cited precedent for this finding, In re Lohr, supra, has little relation to the facts of the present case as previously pointed out. In the *Lohr* record the evidence of improved results, i. e., the actual data, was criticized as being inconsistent with such a conclusion and therefore inconclusive as to unobviousness. The board has not here questioned the factual showing that improved results are achieved by the claimed invention.

■■ We find nothing in section 103 which warrants the board's attempted dismissal of the differences between appellants' claimed compound and the prior art as not being "differences in kind," whatever this may mean. This phrase as here encountered is used by the board to infer that unless a "difference in kind" is found, the invention is obvious under section 103. Whether the difference between the claimed invention and the prior art is a difference "in kind" or a difference "in degree" is not mentioned in section 103. Section 103 simply requires a determination as to whether the invention as a whole would have been *obvious* to one of ordinary skill in the art at the time of appellants' invention. An unexpected increase in physiological activity may be persuasive evidence of unobviousness, In re Grier, 342 F.2d 120, 52 CCPA 1081. In all cases it is to be considered along with other evidence of unobviousness.

Here, we are not concerned with any finite degree of difference in physiologic activity as the determinative factor in resolving the issue of unobviousness under section 103. The difference in physiologic activity as shown in the record herein has been considered and evaluated along with all other evidence of record. Our legal conclusion is that the

facts of record do not supply a reasonable factual basis upon which to support the board's affirmance of the examiner's finding of obviousness of the claimed invention.[2] The decision of the board is therefore reversed.

Reversed.

WORLEY, C. J., concurs in the result.

---

2. The solicitor argues in his brief:
   It is * * * submitted that even if the Court considers the comparative data to render claims 2, 3, 4, 7, 8 and 9, unobvious under 35 U.S.C. § 103, such data are not sufficiently representative of the properties of the compounds embraced by the claimed genus, as to render claim 1 similarly unobvious.
   The examiner and the board made no such objection. Rather, the appealed claims were considered together below and we therefore decline to consider the relevancy and weight of the above reasoning in regard to the obviousness of appealed claim 1.

