50 CCPA

**Application of Arthur D. LOHR and Harold M. Spurlin.**

**Patent Appeal No. 6968.**

United States Court of Customs and Patent Appeals.
May 16, 1963.

Clinton F. Miller, Wilmington, Del. (S. Grant Stewart, Wilmington, Del., of counsel), for appellants.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and AL- MOND, Judges.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 1 to 10, the only claims of appellants' patent application,[1] as unpatentable over a single prior art patent.

The invention relates to organic thiophosphate compounds having the general formula

$$CH_3 \quad CH_3$$
$$| \quad \quad O \quad \quad |$$
$$CH \quad \quad C-SP(OR)_2$$
$$| \quad \quad \quad \| \quad \quad S$$
$$CH_2 \quad \quad CH-SP(OR)_2$$
$$\quad \quad S \quad \quad \| \quad S$$

in which R represents a lower alkyl radical.

The compounds have pesticidal properties and are said to distinguish over known pesticidal compounds in being more toxic at low concentrations toward certain pests and in having exceptionally good systemic toxicity.

The claims are drawn to the new compounds alone and to pesticidal compositions comprising the compounds and "an insecticidal adjuvant." Claim 1 is a representative compound claim and reads:

"1. As a new composition of matter a compound of the formula

$$CH_3 \quad CH_3$$
$$| \quad \quad O \quad \quad |$$
$$CH \quad \quad C-SP(OR)_2$$
$$| \quad \quad \quad \| \quad \quad S$$
$$CH_2 \quad \quad CH-SP(OR)_2$$
$$\quad \quad S \quad \quad \| \quad S$$

in which each R represents a radical of the group consisting of lower alkyl and chloro lower alkyl."

The reference relied on is:

Haubein 2,725,331 November 29, 1955.

The claimed compounds are homologs[2] of the compounds shown in the Haubein reference with the sole difference being the presence in the claimed compounds of two methyl groups at the 2 and 6 positions of the heterocyclic nucleus. Haubein discloses 2,3-thioxanedithiol S,S-Bis(O,O-dialkylphosphorodithioate) without the dimethyl substitution on the ring. Use as a pesticide and dilution with an insecticidal adjuvant as a carrier are also taught in Haubein.

---

1. Ser. No. 628,503 filed Dec. 17, 1956, for Dimethylthioxanedithiol S,S-Bis(O,O-Diethyl Phosphorodithioate) and Its Use as an Insecticide.

2. We recognize that the compounds here in question are not homologs within the classic aliphatic chain sense and are not adjacent homologs in the traditional sense since they differ by two methyl groups attached to a heterocyclic ring structure. However, no issue has been raised

as to whether the compounds here involved are "true" homologs or not, and we do not propose to raise one. As we recently said in In re Papesch, 315 F.2d 381, 50 CCPA ——, "we are past giving too much legal significance to the bare term 'homolog,' even where there is an admission of homology, as there appears to be here." The important fact is that there is present here a close structural similarity, whether or not the compounds are adjacent homologs.

The compounds are made by the same reactions in Haubein as are disclosed in the instant specification, *viz.*, a parathioxane derivative is reacted with the diester of dithiophosphoric acid.

Appellants admit "a superficial resemblance" to the Haubein esters, but contend that they have proceeded in a direction contrary to that suggested by the prior art and have obtained unexpected superiority in their compounds as pesticidal agents against certain insects. The argument rests on the basic premise stated in appellants' specification that "it is known that these compounds [of Haubein] decrease in insecticidal activity with increase in the number of carbon atoms in the molecule." The support for this premise is the teaching in the patent that pea aphids, when sprayed with a 0.05% emulsion of the *ethyl* ester, suffered only a 20% kill, whereas a 90% kill resulted when the *methyl* ester was used at half the concentration (0.025%). It should be noted, however, that the patent does not set forth the basic premise of appellants, but merely gives the two examples from which the premise was hypothesized. After assuming a relationship between the length of the alkyl chain and toxicity based on the two examples with pea aphids, it appears that appellants reasoned that the proportion of sulfur and phosphorus bears a relationship to toxicity. The final step in developing the hypothesis is that as carbon content of a molecule increases, toxicity decreases. The specification states:

" * * * Since the present compounds are higher homologs of the compounds of U.S. 2,725,331 [Haubein], they contain more carbon and consequently a lower percentage of sulfur and phosphorus, and it was, therefore, surprising that their toxicity was not lower but on the contrary was much higher."

In other words, having developed this hypothesis based on the two pea aphid examples of Haubein, appellants seek a patent for having substituted methyl groups for two hydrogens on the thioxane ring, which is distinct from the portion of the compound to which the alkyl side chains are attached, in the face of the "teaching" of the prior art. They expected, having been through the above reasoning process, that adding carbon to the thioxane ring in the Haubein compounds would decrease toxicity because a greater kill of pea aphids resulted when the methyl ester was used than when the ethyl ester was used.

The examiner was not convinced that the compounds or compositions were patentable on the basis of the specification alone. He stated:

" * * * The oath does not verify the subject matter of the specification. Therefore, in the absence of a verified showing of a difference in the properties with regard to a spectrum of insects the subject matter is not patentable."

After final rejection by the primary examiner, appellants submitted two affidavits. The first was very brief and contained no factual data but merely conclusions. The second affidavit is far more complete than the first and makes a direct comparison between the compounds of Haubein and the claimed compounds in effectiveness against several pests.

The second affidavit was prepared by Haubein, the inventor of the prior art patent. He stated that he prepared the insecticides and turned them over to trained entomologists for comparative toxicity studies by standard test procedures. The tabulated results compared the effectiveness of the methyl, ethyl and propyl esters of the Haubein general formula and of appellants' general formula with respect to houseflies, Mexican bean beetles and two-spotted spider mites.

The second affidavit is relied on to support the theory that increasing the number of carbon atoms in the alkyl group of the ester side chains will de-

crease toxicity as well as to prove the unexpected superiority of the dimethyl substituted compounds of the instant claims.

As to the first proposition, appellants argue that the Board of Appeals did not challenge appellants' position that there is a detrimental influence in increasing the size of the alkyl group. Therefore, they argue, the board is in agreement with appellants' showing on this point. However, the board's opinion would appear to challenge the basic premise upon which appellants build their hypothesis in stating:

"* * * we note that the isopropyl ester of appellants is not superior to Haubein's isopropyl ester. No substantial basis is found for appellants' inference that Haubein indicates that appellants' isopropyl ester would be expected to be inferior."

Nevertheless, the solicitor apparently accepts the fundamental proposition that the size of the alkyl groups in the ester side chains affects insecticidal activity, relying on the data presented in the affidavit. However, the solicitor challenges the next inference that methylating the thioxane ring would be expected to reduce insecticidal activity. He states: "The weakness of appellants' hypothesis is that it is a result of generalizing from a single example." The solicitor also stresses the fact, recognized by the board, that insecticidal activity is a largely unpredictable matter.

As to the second proposition that it is unexpected that the dimethyl counterparts of the Haubein compounds would have greater toxicity, the board said, "* * * we do not regard the evidence presented as having established the over-all superiority of appellants' homologs over those of Haubein * *."

We agree with the board that the affidavit is not conclusive proof of unexpected and superior results using the claimed compounds. With respect to the Mexican bean beetle and the two-spotted spider mite, the results are precisely the same with the Haubein propyl ester and with the claimed propyl ester. With the ethyl esters on the two-spotted spider mites, appellants' compound is only "somewhat superior," as noted by the board, to the Haubein compound. No other compounds were tested on the two-spotted spider mite. With the housefly, only methyl and ethyl esters were compared, and the results obtained do not correspond with those obtained in the tests recited in the specification of the Haubein patent.

The Haubein patent states that a 92 per cent kill was obtained with a 0.1% solution of the ethyl ester against houseflies. However, the same inventor swore in the second affidavit that he obtained only a 12 per cent kill with the same concentration of the same compound against the same pest. In each instance, "standard test methods" are said to have been used. There is no explanation in the record for this contradiction.

As noted by the examiner and the board, there is no showing of effectiveness against a broad spectrum of insects or any other insects than those against which the Haubein compounds are used.

All of the above inconsistencies and deficiencies detract from the weight to be given to the second affidavit. Appellants have not shown any consistently predictable insecticidal activity. Insecticidal activity remains unpredictable as was noted in In re Schechter et al., 205 F.2d 185, 40 CCPA 1009. Nor have appellants shown that the claimed compounds differ so greatly in insecticidal activity from known prior art homologs as to warrant a patent. The affidavit does not contain sufficient evidence to prove the propositions asserted. The prior art patent shows lower homologs of the same compounds for use as an insecticide against the same insects. The Haubein patent shows a higher per cent kill against houseflies than has been shown to result with any of the compounds tested in the second affidavit.

Against other pests, the same results are obtained using the Haubein propyl compound and the homolog of the instant claims.

 When a new compound so closely related to a prior art compound as to be structurally obvious is sought to be patented based on the alleged greater effectiveness of the new compound for the same purpose as the old compound, clear and convincing evidence of substantially greater effectiveness is needed. Here there are no new properties, but merely an alleged improvement in the same property for use against the same pests.

 Appellants argue that they have shown marked superiority to satisfy what they term "the law with respect to homology," relying on In re Henze, 181 F.2d 196, 37 CCPA 1009. While this court stated in In re Mills, 281 F.2d 218, 47 CCPA 1185, with respect to the Henze case, that statements applicable to particular fact situations should not be frozen into "legal rules of general application," we do reaffirm the statement in Henze that "[W]hether invention exists over prior art isomers and homologues is a question to be decided in each case." [3] As the court also said in the Mills case, we must apply the statutory test of "obviousness" under 35 U.S.C. § 103, and "homology" is "nothing more than a fact which must be considered with all other relevant facts" in applying this test.

Considering all of the evidence in the record: the close structural similarity, the similar method of making the compounds, the similar properties, the same use, and the inconclusive showing of the affidavit, we are constrained to agree with the Board of Appeals that the claimed compounds and compositions are obvious in view of the prior art.

The decision of the Board of Appeals is affirmed.

Affirmed.

[3]. The term "invention" used in the Henze case corresponds to "unobviousness" under the present statute 35 U.S.C. § 103.