53 CCPA
**Application of Johannes HEYNA, August Bauer and Klaus Berner.**
**Patent Appeal No. 7650.**

United States Court of Customs and Patent Appeals.

May 19, 1966.

Rehearing Denied July 28, 1966.

\* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief Judge WORLEY, pursuant to provisions

Martin and Smith, JJ., dissented.

Henry W. Koster, New York City, for appellants.

Joseph Schimmel, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for the Commissioner of Patents.

Before RICH, Acting Chief Judge, and MARTIN, SMITH, and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.\*

ALMOND, Judge.

This is an appeal from the decision of the Board of Appeals affirming the rejection of claims 1–6 of appellants' application [1] entitled "Yellow Water-Soluble Monoazo Dyestuffs." No claims have been allowed.

The issue is whether appellants' claimed chemical compositions are obvious under

of Section 294(d), Title 28, United States Code.

1. J. Heyna, A. Bauer, and K. Berner, serial No. 88,022 filed February 9, 1961.

35 U.S.C. § 103 in view of the following references:

Alsberg et al.    2,895,785   July 21, 1959
(Alsberg)
Muller et al.    2,424,493   July 22, 1947
(Muller)

In addition to the foregoing references, appellants cited the following references before the board in support of their arguments for patentability of the claims in issue:

Bolliger    2,799,672   July 16, 1957
Heyna et al.    2,657,205   Oct. 27, 1953
(Heyna)

Claim 1, which suffices as a description of appellants' invention, reads:

1. Water-soluble monoazo-dyestuffs having the formula

wherein X represents a member selected from the group consisting of methyl and lower alkoxy, and Y represents a lower alkoxy group.

Muller discloses yellow water-soluble dyestuffs, one of which has the structural formula:[2]

---

2. We will adopt the solicitor's designations for the various groups appearing in the structural formula. The designations are: The five-membered ring at the right, containing two nitrogen (N) atoms, is designated for convenience herein, as pyrazolone. Depending from the latter is a 6-membered ring, designated * * * as phenyl. The other 6-membered ring (to the left) will be designated as the diazo ring. The chain portion $HO_3S-O-CH_2CH_2-SO_2$ attached to the diazo ring is herein designated as sulfatoethyl sulfone. The portion of the structural

Muller further discloses that his diazo compounds may contain such nuclear substituents as "halogen atoms, alkyl groups, alkoxy groups, nitro groups, and so forth" and that "pyrazolone sulfonic acids" (an $SO_3H$ group on the phenyl ring) are included among the coupling components embraced by the invention.

Alsberg discloses a yellow dyestuff having the structural formula:

$$NaO_3S-OCH_2CH_2SO_2-C_6H_4-N=N-CH-CO$$
$$| \quad \backslash$$
$$\qquad\qquad N-C_6H_4-SO_3Na$$
$$C=N /$$
$$|$$
$$CH_3$$

Alsberg's dyestuffs are used for dyeing natural or regenerated cellulose and react with the fiber.

$$OCH_3$$
$$|$$
ring with $-NH_2$ and $SO_2-NH-CH_2CH_2-O$
$$|$$
$$O_2S-C_2H_5$$

Bolliger discloses a yellow dye prepared from a diazo component having the structural formula:

and a coupling component having the structural formula:

$$CH_3$$
$$|$$
$$C===N$$
$$| \qquad \backslash N-C_6H_4$$
$$CH==C \qquad \qquad |$$
$$| \qquad\qquad\qquad SO_3H$$
$$OH$$

formula of [the Muller] dyestuff * * *, as well as of the formulae considered hereinafter, located to the right of the —N=N— group, which portion includes pyrazolone, will be referred to as the coupling component.

The product has the structural formula:

$$C_2H_5 - SO_2 - O - CH_2CH_2 - NH - SO_2 - \cdots$$

(with OCH$_3$, N=N—C—C—CH$_3$, HO, N, SO$_3$H substituents)

---

Heyna discloses a yellow dyestuff having the structural formula:

(structural formula with OCH$_3$, N=N—CH—C—CH$_3$, CO, N, N, Cl, CH$_3$, SO$_2$, CH, CH$_2$, SO$_3$K)

Appellants presented two arguments for patentability before the board and reiterate them here, the first relating to the structural nonobviousness of their claimed dyestuffs and the second to the unexpected properties exhibited by such dyestuffs.

### Structural Nonobviousness

While conceding that the basic structure of their dyestuffs is disclosed by Muller and Alsberg, appellants contend that the reference teachings with respect to possible ring substituents are so broad as not to be suggestive of the particular number and location of the substituents in their compounds. The solicitor has attempted to answer this argument by showing that in fact the number of possible substituents disclosed by the reference is not as large as might appear at first blush.

While no doubt the greater the number of substituents disclosed by the prior art the less likely it will be that a particular substituent would be suggested to one of ordinary skill in the art, the more important consideration in an issue of this kind is the context in which such disclosure appears. In Alsberg and Muller, we have two disclosures which specifically set forth the skeleton structure of appellants' claimed compounds and relegate to a general discussion a relatively few possible groups which may be substituted thereon. Further, Alsberg and Muller, like appellants, are concerned with dyestuffs of generally the same color (yellow) which are suitable for dyeing the same materials. So far as structure is concerned, therefore, we think that

Alsberg and Muller, taken in their entireties, are suggestive of appellants' claimed compounds. Accordingly, we find these compounds prima facie obvious from a consideration of structure.

*Unexpected Property*

Appellants submitted an affidavit [3] in which five yellow dyestuffs, having the structural formulae set forth below, were tested for tinctorial strength.

I.

$OCH_3$

$H_2C = HC - O_2S$    $HO - C$    $N$

$-N = N - C - C - CH_3$

HEYNA

$Cl - $    $- CH_3$

$SO_3H$

II.

$HO_3S - O - H_2C - H_2C - O_2S -$⟨⟩$- N = N - C - C - CH_3$

$HO - C$    $N$

ALSBERG

$SO_3H$

III.

$OCH_3$

$H_5C_2 - O_2S - O - H_2C - H_2C - HN - O_2S$    $- N = N - C - C - CH_3$

$HO - C$    $N$

BOLLIGER

$SO_3H$

---

3. The initial board decision was rendered November 13, 1964. A request for reconsideration was submitted December 14, 1964, the last day permitted by statute. In the request, appellants asked leave to file a *second* affidavit to meet the board's criticism of the first affidavit. The board refused such request in an opinion dated December 22, 1964. On the same date, the affidavit mentioned in the request was filed in the Patent Office. The board not having considered the second affidavit, we will not do so either. We note that the examiner's answer dated May 5, 1964 also criticized the first-filed affidavit for substantially the same reasons as did the board.

IV.

$$HO_3S - O - H_2C - H_2C - O_2S ——\underset{CH_3}{\overset{OCH_3}{\bigodot}}—N = N - C —— C - CH_3$$

APPELLANTS

$$HO - C \qquad N$$

$$\underset{SO_3H}{\bigodot}$$

V.

$$HO_3S - O - H_2C - H_2C - O_2S ——\underset{OCH_3}{\overset{OCH_3}{\bigodot}}—N = N - C — C - CH_3$$

APPELLANTS

$$HO - C \qquad N$$

$$\underset{SO_3H}{\bigodot}$$

The order of tinctorial strength was found to be

V > IV > II > I > III

The point sought to be proved by the affidavit was that whereas the addition of one methoxy group to the diazo ring (samples I and III) caused a decrease in the tinctorial strength vis a vis the un- substituted diazo ring (sample II), two substituents (two methoxy groups in sample V and one methoxy and one methyl group in sample IV) caused an increase in the tinctorial strength.

This affidavit was criticized by the examiner and the board on two grounds, only one of which need be discussed in view of our agreement therewith. With regard to the affidavit, the board stated:

\* \* \* the \* \* \* comparative showing does not demonstrate, as urged by appellants, that the introduction of two auxochrome groups to produce an intensifying of shade would be unexpected since a single auxochrome group lowers the shade intensity and tinctorial strength. The comparisons in the affidavit are not proper since the differences between the various samples are much more than the single variable desired to be demonstrated; namely, the effect of the auxochrome group. Sample 1, as compared with appellants' products (Samples 4 and 5) having two auxochrome groups, and the dyestuff of Alsberg et al. (Sample 2) differing from appellants' products only in the lack of auxochrome groups in the azo component, further differs in that it is a vinyl sulfone instead of a sulfatoethyl sulfone, contains the sulfone group in an isomeric position, and, in addition, includes two further substituents (chloro and methyl) in the phenyl ring of the pyrazolone coupling component. Sample 3, the other dyestuff having a single auxochrome group differs from the Alsberg et al. and appellants' dyestuffs not only in the number of auxochrome groups in the azo component, but also by virtue of the fact that it is an ethyl sulfate ester instead of a sulfate, and contains a sulfonamide linkage instead of a sulfone group in the azo component. Additionally, said sulfonamide group is attached in isomeric relationship, as is the sulfonic acid group in the phenyl ring of the pyrazolone coupling component. It can thus be seen that these numerous departures from the structure of the basic compounds, which

would be expected of themselves to alter shade and intensity of the dyestuff, render completely inconclusive the conclusion desired to be drawn by appellants from the comparative showing. We therefore do not consider that obviousness of appellants' claimed dyestuffs to the chemist of ordinary knowledge and skill (35 U.S.C. 103) based upon the structural obviousness thereof has been negated.

█ █ It was incumbent upon appellants to submit clear and convincing evidence to support their allegation of unexpected property. In re Lohr, 317 F.2d 388, 50 CCPA 1274. We agree with the board that appellants have not met this burden. As the court stated in In re Dunn, 349 F.2d 433, 52 CCPA 1760: "The cause and effect sought to be proven is lost here in the welter of unfixed variables."

We find the claimed compounds structurally obvious, and lacking proof of an unexpected property, we must affirm the board's decision.

Affirmed.

MARTIN, Judge (dissenting).

I cannot agree with the conclusion of the majority since my study of the record does not reveal that the examiner has made a prima facie case of obviousness based on the structures of the references.

As exemplary of the differences between the claimed compounds and the reference compounds, I focus attention here on the substituents on the phenyl ring (called the "diazo ring" by the solicitor, see majority opinion at footnote 2) of the "diazo" component of the dye.

Appellant shows two substituents on the "diazo ring" (besides the sulfatoethyl sulfone group) which are *ortho* and *meta* to the −N=N−group [azo-group]. Alsberg discloses *no* substituents on the "diazo ring." Heyna and Bolliger[1] dis-

1. It should be made clear that an appellant may present evidence to the Patent Office, including "references," to support his arguments for patentability, but such evidence must be presented timely. The Bol-liger and Heyna references were cited by the examiner early in the prosecution and compounds thereof were tested in an affidavit. Thus the references were timely when "cited \* \* \* before the board."

close only *one* substituent, in the ortho position, which may be $OCH_3$, $CH_3$, Cl, or OH. Muller and Bolliger do have very general statements about "other" or "further" substituents. Muller states:

> The diazo compounds may obviously contain further nuclear substituents besides the sulfone-or sulfonamide-group, for example, halogen atoms, alkyl groups, alkoxy groups, nitro groups, and so forth.

Other than that statement, Muller shows *no* specific examples in which there are *any* substituents on the "diazo ring." Bolliger states:

> * * * The dyestuff components to be used may, of course, contain other substituents such, for example, as halogen atoms, nitro groups, acylamino groups, alkyl groups or alkoxy groups. However, there are advantageously used diazo compounds which contain no hydroxyl group in ortho-position to the diazo group.

Bolliger's examples show either no substituents, or only one, $OCH_3$ or $CH_3$, ortho to the "diazo group."

I am compelled to agree with appellants that the general teachings in Muller and Bolliger can be taken only as a "suggestion" of what might be substituted. That suggestion, as appellants note "is practically incapable of assessment insofar as the number of possible substitutions is concerned." I also agree with appellants that there is no specific suggestion "as to where on the * * * ["diazo ring"] such substitutions should be made or how many such substitutions should be made." I cannot consider the general basket disclosure of Muller and Bolliger to render the claimed compounds prima facie obvious. The lack of substituents in Alsberg, and the single substituent in Heyna and Bolliger likewise do not convince me that the claimed compounds prima facie are obvious such that the burden to show unexpected properties shifts to appellants. Thus, I feel that the affidavits of Berner are unnecessary to the case. In my view, the board's decision should be reversed.

SMITH, Judge (dissenting).

Dealing as we are here with a dyestuff, it seems to me that much more is involved than structural similarities and differences of the chemical compounds per se. 35 U.S.C.. § 103 admonishes us to consider the invention as a whole in view of the prior art which existed at the time the invention was made. The legal determination of obviousness must be made under these conditions and with the limitations specified in section 103.

Structural similarities of the claimed invention and the prior art are to be compared as is done in the majority opinion. However, it is the differences between the prior art and the claimed invention which must be ascertained and then the claimed invention as a whole must be evaluated as to its obviousness to one of ordinary skill in the art. I do not find such an evaluation in the majority opinion and I find its legal conclusion as to obviousness to be factually unsupportable. Judge Martin's dissent points out the technical differences, largely in terms of chemical structure, and finds that the "general basket disclosure" of the references does not "render the claimed compounds prima facie obvious," contrary to the majority's finding.

Additionally, it seems to me the consideration of chemical structures alone to determine whether chemical compounds are "prima facie obvious" is contrary to the inquiry required by the statute. The majority *applies* section 103 here by determining that the claimed compounds are "prima facie obvious" on the basis of chemical structure and that appellants have failed to show proof of an "unexpected result." Nowhere in the majority opinion do I find a consideration of the invention as a whole. The obviousness or unobviousness of an invention in the chemical field should not be made to turn on the narrow issue of structure per se. It is an important factor to be weighed but it remains only a single factor which is not here a determinate factor when the invention as a whole is considered.

My analysis of the invention as a whole begins with a consideration of the composition which appellants produced for a specific end purpose, i. e., a dyestuff to produce a desired color effect on particular textile materials. To achieve this end, appellants devised particular substituents at certain points on the diazo ring. The prior art admittedly produced a dyestuff in the yellow range but it did not teach varying those chemical structures in the manner disclosed by appellants to achieve the results sought by appellants.

I find nothing in the majority opinion pointing to any teaching in the prior art which would make appellants' invention obvious to those of ordinary skill in this art. It seems to me that the majority opinion jumps to its stated legal conclusion without support from the record. My independent consideration of the record convinces me that appellants' invention as a whole may well have been unobvious under the stated conditions of section 103. However, despite this personal opinion and giving due consideration to all the factors considered by the majority, the case on the present record presents such a clear case of doubt as to the ultimate legal conclusion of obviousness of the invention as a whole that I would resolve the doubt in favor of appellants. In re Nurkiewicz, 338 F.2d 1020, 52 CCPA 848.